Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Constance Van Kley
Rylee Sommers-Flanagan
Upper Seven Law
P.O. Box 31
Helena, MT 59624
406-306-0330
constance@uppersevenlaw.com
rylee@uppersevenlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| ALOYSIUS D. BLACK CROW, et al., individually and on behalf of all other persons similarly situated, | ) ) ) | CV 21-97-M-DWM |
| Plaintiffs, | ) ) ) ) | **CONSOLIDATED CLASS ACTION COMPLAINT AND** |
| v. | ) ) | **JURY DEMAND** |
| LAKE COUNTY, MONTANA; BILL BARRON; STEVE STANLEY; GALE DECKER; KATE STINGER; DONALD BELL, BEN WOODS, and DOES 1-10, | ) ) ) ) ) | |
| Defendants. | ) | |

CONSOLIDATED CLASS ACTION COMPLAINT       PAGE 1

Pursuant to the Court's Order of January 24, 2022, in this matter, Dkt#11, Plaintiffs now file this Consolidated Class Action Complaint.

## Introduction

This is a class action brought on behalf of inmates confined in the Lake County, Montana, jail to end the systematic violation of their rights under federal and state law. Plaintiffs seek declaratory and injunctive relief pursuant to the United States Constitution's guarantees of due process of law, equal protection of the laws, freedom from cruel and unusual punishment, access to the courts, and the free exercise of religion; as well as related provisions of the Montana Constitution and state statutory law.

## Jurisdiction

1. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 USC §1343(a)(3), and pendent jurisdiction over Plaintiffs' state claims.

2. Each individually named plaintiff is an adult citizen of the United States who is or has been confined in the Lake County jail, also known as the Lake County detention center ["the jail"], as of the date of each individual's complaint. As a current inmate, each named Plaintiff is personally affected by the deficiencies, inadequate conditions and violations of law described below.

## The Parties

3.      Defendant Lake County is the political subdivision of the State of Montana that owns and operates the jail. Defendants Bill Barron, Steve Stanley, and Gale Decker are the Commissioners of Lake County, Montana. The Commissioners are the governing body of Lake County, and are responsible by law for the maintenance, operation, inspection, furnishing, and repair of the jail. Defendant Kate Stinger is the Executive Administrative Assistant of Lake County, and is responsible for enacting decisions of the Commissioners. Defendant Donald Bell is the Lake County Sheriff and Defendant Ben Woods is the Lake County Undersheriff. They are responsible by law for the management and control of the jail, and the custody and care of the inmates confined in the jail.  Defendants Does 1-10 are individuals whose true identities and capacities are as yet unknown to Plaintiffs and their counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged here and who in some manner or form not currently discovered or known to Plaintiffs may have contributed to or be responsible for the injuries alleged here. The true names and capacities of the Doe Defendants will be substituted as they become known.

4.      At all relevant times, individual Defendants acted under color of law and in the course and scope of their employment and/or on behalf of Lake County.

5.      Plaintiffs currently are or recently were incarcerated in the Lake County jail. Plaintiffs bring this action on their own behalf and on behalf of all other inmates of the jail, both present and future.

6.      Plaintiffs have exhausted their administrative remedies and jurisdiction is proper in this Court.

**Factual Allegations**

7.      The Lake County jail is used to confine pre-trial detainees who have not yet been convicted of any crime, and who bear the legal presumption of innocence; inmates who have been convicted of criminal offenses and sentenced to a term of imprisonment in the jail; and individuals who have been convicted of crimes and sentenced to the Montana State Prison, and are awaiting transfer to that facility or another facility. Inmates are confined in the jail for periods extending from a few hours to more than three years in length.

8.      Inmates are deprived of the essentials of soap, toothpaste, and shampoo for unreasonable periods of time.

9.      Inmates are required to share razors, thereby creating a health hazard.

10. Inmates are crowded into cells and many inmates are required to sleep on broken bunks or on the floor in inadequate bedding.

11. Because the jail is overcrowded and because of inadequate screening processes, inmates are not appropriately categorized and segregated, leading to physical violence within cell blocks.

12. Heating and cooling vents are visibly clogged, and appropriate room temperatures cannot be maintained.

13. Inmates regularly lack access to hot water for periods of days or longer.

14. The jail is infested with insects, and inadequate measures are taken to control and prevent such infestation.

15. The physical infrastructure of the jail is deteriorating to the point of failure, with beds detaching from walls; ventilation systems unable to properly provide air exchange; paint peeling from walls and ceilings; metal surfaces rusting; mold growing on ceilings, walls, floors, and mattresses; and non-functional sanitation systems. This physical deterioration of the jail presents hazards to inmates' mental and physical health.

16. The jail has no reasonable plan to ensure inmates' safety in the event of a fire. The jail lacks appropriate fire alarm systems, emergency protocols, and fire suppression equipment.

17.     Most cells lack intercom systems, and inmates must pound on the door and yell to notify staff in the event of an emergency.

18.     The jail offers little or no opportunity for exercise or recreation by inmates, and no opportunity for outdoor recreation. As a result of crowding, the small dedicated recreational space in the jail is often used for housing inmates. Even when it is available for recreation, the space does not provide access to the outdoors and is empty of exercise equipment.

19.     Inmates lack reasonable access to fresh air and sunlight.

20.     Most inmates are required to spend 24 hours of every day in enforced idleness in small cellblocks or in segregation. This results in unreasonable and unnecessary psychological stress and physical deterioration for the prisoners.

21.     Inmates are deprived of reasonable access to a law library, legal resources, or to persons trained in law.

22.     Inmates are deprived of reasonable opportunities to petition for redress of grievances.

23.     The visiting room is regularly used as a solitary confinement cell, and it is so small that there is no room to walk when a mattress is placed on the floor. This room lacks running water and a toilet. At least one inmate has hanged himself from the phone in this room while in solitary confinement.

24. Based on information and belief, jail staff open and read privileged inmate mails, including legal mail.

25. Inmates are effectively deprived of reasonable access to medical care. They are required to pay $10.00 when they request medical care, regardless of insurance status, tribal membership, and indigency. Inmates are charged even when they do not see a licensed practitioner.

26. Inmates are deprived of reasonable dental care.

27. The jail does not provide reasonable accommodations for inmates with disabilities.

28. Food portions are inadequate, and there is insufficient variation in meals.

29. The jail fails to provide special diets for inmates with special dietary practices and needs.

30. The jail fails to allow reasonable opportunity for visitation by family members and friends, as the visitation cell generally is used to house inmates.

31. The jail fails to allow reasonable opportunity for private communications with counsel. Inmates must confer with counsel in public-facing areas with audio and video recording equipment installed, and others may hear their communications.

32. The jail fails to disseminate jail rules and regulations adequately to inmates.

33. Native American inmates are denied access to Native American religious ceremonies, tribal and religious leaders, and ceremonial materials.

34. Although most inmates are Native American, inmates are given access exclusively to Christian religious ceremonies.

35. Native American inmates are denied their right to engage in reasonable Native American religious practices, and therefore the free exercise of their religion.

36. Through their acts and omissions described above, Defendants fail to operate and maintain the Lake County jail in a manner consistent with the requirements of federal and state law. Unless and until this Court grants injunctive relief as requested here, Plaintiffs and Class Members will continue to suffer irreparable injury due to the cruel and unusual punishment, and other illegal and unconstitutional conditions, that are forced upon them on a daily basis.

## Class Action Allegations

37. This action is brought, and properly may proceed, as a class action lawsuit pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3).

38. Plaintiff seeks certification of a Class defined as:

> **All persons who are, have been, or will be incarcerated at the Lake County jail.**

39. Plaintiff seeks certification of a Subclass defined as:

**All enrolled members of the Confederated Salish and Kootenai Tribes who are, have been, or will be incarcerated at the Lake County jail.**

40. **Numerosity.** The Class and Subclass are so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class and Subclass are unknown at this time, such information being in the exclusive possession of Defendants and obtainable only through the discovery process. Plaintiffs believe, and on that basis allege, that the number of Class members exceeds one thousand. Plaintiffs believe, and on that basis allege, that the number of Subclass members reaches multiple hundreds.

41. **Existence/Predominance of Common Questions of Fact and Law.** Common questions of law and fact exist as to all members of the Class and Subclass. These questions predominate over the questions affecting individual Class and Subclass members. These common legal and factual questions include, but are not limited to:

    a. Whether Defendants engaged in the alleged conduct;

    b. Whether the conditions of confinement in the Lake County jail meet federal constitutional standards;

    c. Whether the conditions of confinement in the Lake County jail meet state constitutional standards;

    d. Whether the conditions of confinement in the Lake County jail meet state statutory standards;

    e. Whether Native American inmates are denied the right of free exercise of religion;

    f. Whether the failure to provide Native American inmates with reasonable access to Native American religious practices violates the Fourteenth Amendment's Equal Protection Clause;

    g. Whether the failure to provide Native American inmates with reasonable access to Native American religious practices violates the Montana Religious Freedom Restoration Act;

    h. Whether the failure to provide reasonable, no-cost medical care to enrolled tribal members violates the Hellgate Treaty of 1855; and

    i. Whether Class members and Subclass members are entitled to declaratory and injunctive relief.

42. **Typicality.** Plaintiffs' claims are typical of the claims of the Class and Subclass. Plaintiffs have been incarcerated at the Lake County jail and have

personally witnessed the illegal conditions of confinement alleged. Most plaintiffs are members of the Subclass and have been denied access to Native American religious practices and reasonable, no-cost medical care.

43. **Adequacy.** Plaintiffs are adequate representatives for the Class and Subclass because their interests do not conflict with the interests of the Class and Subclass. Plaintiffs have been appointed counsel competent and highly experienced in federal civil rights litigation. The interests of the Class and Subclass will be fairly and adequately protected by Plaintiffs and their counsel.

44. **Superiority.** A class action is superior to all other available means of fair and efficient adjudication of the claims by Plaintiffs and members of the Class and Subclass. Particularly because the roster of inmates at the Lake County jail changes daily, it would be virtually impossible for members of the Class and Subclass individually to redress effectively the injuries caused by Defendants. Even if Class and Subclass members could afford such individual litigation, the court system could not. Individualized litigation would increase the delay and expense to all parties and create the potential for inconsistent or contradictory judgments. The class action device presents far fewer management difficulties and the benefits of one-time adjudication, economy of scale, and comprehensive supervision by a single court.

45. Defendants have acted and refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate final equitable and injunctive relief with respect to the Class and Subclass.

## Count 1

46. As a result of the acts and omissions described above, Defendants have deprived Plaintiffs and Class Members of the rights secured by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, including, but not limited to, their rights to due process of law and the equal protection of the laws; their rights to be free from cruel and unusual punishment; and their rights to access to the courts.

47. Plaintiffs and Class Members seek relief under 42 USC § 1983.

## Count 2

48. As a result of the acts and omissions described above, Defendants have deprived Plaintiffs and Subclass Members of the rights secured by the First and Fourteenth Amendments to the United States Constitution, including, but not limited to, their rights to the free exercise of religion and to equal protection.

49. Plaintiffs and Subclass Members seek relief under 42 USC § 1983.

## Count 3

50. As a result of the acts and omissions described above, Defendants have deprived Plaintiffs and Subclass Members of the right to adequate and cost-free medical care secured to them through the Hellgate Treaty of 1855. *See Rosebud Sioux Tribe v. United States*, 9 F.4th 1018 (8th Cir. 2021). The Hellgate Treaty of 1855 is the "supreme Law of the Land," U.S. Const. art. VI, cl. 2, which vests Plaintiffs and Subclass members with the right to adequate and cost-free medical care.

51. Plaintiffs and Subclass members seek relief under 42 U.S.C. § 1983.

### Count 4

52. As a result of the acts and omissions described above, Defendants have deprived Plaintiffs and Class Members of the rights secured them by Article II, Sections 3, 4, 5, 16, 17, 22, 28, and 34 of the Montana Constitution; the Montana Religious Freedom Restoration Act, MCA § 27-33-101, *et seq.*; and state statutory law relating to the operation and maintenance of jails and the rights of prisoners, including MCA §§ 7-32-2121; 7-32-2201; 7-32-2204; 7-22-2205; 7-32-2222; 7-32-2234; 45-5-204; 46-18-101; and 46-18-801.

53. Plaintiffs and Class Members seek relief under this Court's pendent jurisdiction of state law claims.

### Prayer for Relief

For all of the above-stated reasons, Plaintiffs and Class Members request that this Court award the following relief:

1. Assume jurisdiction of this action.

2. Determine that the action will be maintained as a class action pursuant to FRCP 23, with the class and subclass designated as described above.

3. Issue final declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Defendants have violated Plaintiffs' rights secured by the constitutions and laws of the United States and the State of Montana.

4. Issue preliminary and permanent injunctive relief pursuant to FRCP 65, enjoining Defendants, their agents, and all those acting in concert with them, from depriving Plaintiffs of the rights secured to them by the constitutions and laws of the United States and the State of Montana; and requiring the implementation of an appropriate plan of remediation.

5. Award Subclass members damages for unlawfully charging enrolled tribal members for medical care during their terms of incarceration.

6. Award Plaintiffs their reasonable attorney's fees and costs.

## Jury Demand

Plaintiffs and Class Members demand a trial by jury on all issues so triable.

Dated March 28th, 2022

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM

/s/Constance Van Kley
UPPER SEVEN LAW

Attorneys for Plaintiffs